# ATTACHMENT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUFFOLK SUPERIOR COURT
Civil Action No.: 14-3197C

JOHN PAUL DICICCO,
Plaintiff

v.

THE TOWN OF SWAMPSCOTT, a municipal
Corporation, SWAMPSCOTT CHIEF OF POLICE,
RONALD MADIGAN, OFFICER MICHAEL FRAYLER,
SERGEANT RICHARD McCARRISTON,
LIEUTENANT PAUL BARTRAM, JOHN DOE
Defendants

## FIRST COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is an action for state and federal civil rights violations, false arrest, false imprisonment, malicious prosecution, defamation, vicarious liability, intentional infliction of emotional distress, negligent infliction of emotional distress, and Massachusetts Tort Claims Act violations, against three officers, the chief of the Swampscott Police Department and the Town of Swampscott all resulting from the false arrest and wrongful detention by the officers, with supervisory liability and municipal liability claims against the Town and its Chief of Police. By their acts and omissions the defendants proximately caused the plaintiff to be unlawfully jailed.

### JURISDICTION

3. This action is brought pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Massachusetts Civil Rights Act, the Massachusetts Tort Claims Act and common law.

### PARTIES

4. Plaintiff John Paul DiCicco ("DiCicco") resides in the City of East Boston, Suffolk

County, Massachusetts.

5. Defendant Town of Swampscott ("the Town") is a duly constituted body politic, a municipal corporation within the County of Essex, Commonwealth of Massachusetts.

6. Defendant Ronald Madigan ("Madigan") was at all times material hereto the chief of police of the Town.

7. Defendant Michael Frayler ("Frayler") was at all pertinent times a duly sworn officer of the Swampscott Police Department ("SPD").

8. Defendant Richard McCarriston ("McCarriston") was at all pertinent times a duly sworn officer of the SPD.

9. Defendant Paul Bartram ("Bartram") was at all pertinent times a duly sworn officer of the SPD.

10. Defendant John DOE ("John Doe") is, at present unknown, believed to have been at all pertinent times a duly sworn officer of the SPD.

11. Each individual defendant is sued in his individual and official capacities.

## FACTS

12. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

13. At all relevant times the Town was the employer of each individual defendant.

14. At all times pertinent hereto Madigan, as Chief of Police, exercised authority over the Swampscott Police Department and its officers and was a maker of policy, including training, as to standards of conduct and discipline within the Swampscott Police Department.

15. At all times pertinent hereto the each individual defendant acted under color of law in his capacity as a police officer/city official, and pursuant to the statutes, ordinances, regulations, policies, customs, practices, and usage of the Commonwealth of Massachusetts and/or the Town of Swampscott.

### False Arrest and Malicious Prosecution of DiCicco

16. On or about October 11, 2011, Mr. DiCicco, a resident of East Boston with no prior record, joined his uncle, a Swampscott resident for a day of hunting in New Hampshire.

17. Upon his arrival in Swampscott he parked his car and entered his uncle's car for the ride to New Hampshire.

18. After a long day of hunting, Mr. DiCicco returned to Swampscott with his uncle and said the customary good-byes.

19. Shortly before 10:00 PM, he placed his locked shotgun, along with his ammunition, and various knives used for hunting into his car.

20. At all times relevant to this letter, Mr. DiCicco was the licensed, lawful holder of a Massachusetts firearms identification card.

21. A few minutes into his return trip home, Mr. DiCicco was the subject of a routine traffic stop.

22. The police officer informed Mr. DiCicco that he was being pulled over for speeding and requested his license and registration.

23. As a responsible citizen and gun owner, Mr. DiCicco informed the Swampscott Police Officer, later identified as Officer Michael Frayler, that: 1) he had just returned home from a hunting trip, 2) he had a shotgun and ammunition in his car, 3) he had several

3

hunting related knives both on his person and in the trunk of the car, and 4) that he was the holder of a Massachusetts Firearms Identification Card.

24. Officer Frayler ordered Mr. DiCicco to exit the vehicle and radioed for assistance.

25. Mr. DiCicco showed the officer his FID card as well as his paperwork demonstrating that he had filed his renewal application with the Boston Police Department ("BPD") and had paid the applicable fee.

26. Mr. DiCicco was then frisked, placed in handcuffs, detained by Officer Frayler and subsequently placed in the back of a police cruiser.

27. A short while later additional Swampscott police and members of the Massachusetts State Police arrived.

28. Officer Frayler informed Mr. DiCicco that his FID card was expired, and since he failed to file a renewal application prior to expiration, the statutory 90 day grace period did not apply.

29. Officer Frayler informed Mr. DiCicco that he "was one of the licensing officers for Swampscott Police and was very familiar with the laws."

30. Swampscott Sgt. McCarriston inquired of Officer Frayler if he was sure of his interpretation to which Officer Frayler stated, "yes he is under arrest".

31. Sgt. McCarriston having properly doubted the propriety of the arrest, took not steps to stop the unlawful arrest.

32. Mr. DiCicco was handcuffed, brought to Swampscott Police Station and booked like a common criminal.

33. His hunting equipment was taken into custody by the Swampscott Police and his car was towed from the scene.

34. Prior to being bailed out, Officer Frayler approached Mr. DiCicco and stated, "if you didn't tell me about the gun, I would have put my fist in your face."

35. Presently unknown officers of the Swampscott Police Department published to the local media Plaintiff's name, the charges for which he was arrested and released pictures of Plaintiff's belongings which were wrongfully seized at the time of his arrest.

36. Mr. DiCicco was held without bail until his first appearance in the Lynn District Court on the morning of October 12, 2011.

37. The Court appointed a public defender, a plea of not guilty was entered and the case was continued until November 9, 2011.

38. In a notice dated November 7, 2011, the Commonwealth, through District Attorney Blodgett's office, gave notice of a Nolle Prosequi as to the entirety of the complaint against Mr. DiCicco, noting, part, "the charges are not supported where M.G.L. c.140, sec. 131(i) states that a "license shall remain valid for a period of 90 days beyond the stated expiration date on the license," and the Defendant's license had expired less than 30 days before his arrest."

39. In a note on the Commonwealth's notice dated, April 27 2012, Judge Conlon wrote, "[t]he Defendant should have never been arrested on this matter."

40. A copy of the Nolle Prosequi is attached hereto as Exhibit A.

41. In addition, the Commonwealth, again through the District Attorney's office, recognizing the damage done to Mr. DiCicco filed a motion entitled " Commonwealth's Motion to

Vacate/Expunge" which reads in relevant part, "[t] Defendant therefore should not have been charged with possessing a firearm without a license."

42. A copy of the Commonwealth's Motion is attached hereto as Exhibit B.

43. Though the Court granted the motion to Vacate/Expunge, the Officer of the Commissioner of Probation subsequently filed a motion to reconsider noting as a matter of law the motion could not be granted.

44. Subsequently, the motion to Vacate/Expunge and the resulting order was itself vacated thus leaving Mr. DiCicco with a permanent CORI record.

45. Within days of Mr. DiCicco's arrest he was visited at his home by representatives of the Boston Regional Intelligence Center and the Federal Bureau of Investigation.

46. These law enforcement officers discussed with Mr. DiCicco his recent arrest on firearms related charges and the proximity of his home to Boston's Logan Airport.

47. Mr. DiCicco, who had done nothing wrong, was made to feel like a terrorist.

48. As both the District Attorney's office and Judge Conlon stated, Mr. DiCicco should have never have been arrested.

49. At the time of Mr. DiCicco's arrest, Officer Frayler lacked probable cause to make this arrest.

50. It is undisputable that Officer Frayler did not have probable cause to arrest Mr. DiCicco as NO objective law enforcement officer would have conducted such an unlawful arrest.

51. Mr. DiCicco's unlawful arrest was made possible in part by the failure of the town of Swampscott, Chief Madigan, and its Police Department to properly train its officers.

including its licensing officers, in the firearms licensing laws of the Commonwealth.

52. As a result of Officer Frayler's actions, Mr. DiCicco, a law abiding citizen, with no prior criminal record, in exercise of his Second Amendment right, now has a permanent criminal record, he was forced to deal with the indignity of his arrest, booking, lock up and subsequent arraignment.

53. Lt. Bertram as the office in charge failed to take any steps to determine the priority of Officer Frayler's arrest of Plaintiff.

54. Sgt. McCarriston failed to take any action to bring his reservation regarding Officer Frayler's interpretation of the law to Lt. Bertram's attention.

55. Plaintiff was deprived of his weapons for almost one month, thus deny him his constitutionally protected right of self-defense in his home.

56. This entire experience has required Mr. DiCicco to speak with both a therapist and a psychiatrist for stress related issues that have resulted from his unlawful arrest.

57. A M.G.L. c.258 Demand Letter dated August 24, 2012 was sent via certified return receipt requested U.S. mail to Thomas G. Younger, Town Administrator, Richard Malagrifa, Chairman of the Swampscott Board of Selectman and Chief of Police Ronald Madigan. A copy of which is attached hereto as Exhibit C.

58. Defendant John Doe signed an Application for Criminal Complaint against Plaintiff.

## COUNT I
## 42 U.S.C. § 1983
## Frayler, McCarriston, Bertram

59. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

60. As a direct and proximate result of Frayler, McCarriston, and Bertram's violations of his constitutional rights to due process and to be free of unreasonable search and seizure, DiCicco was wrongfully arrested, prosecuted and incarcerated, as set forth herein.

## COUNT II
### 42 U.S.C. § 1983, Supervisory and Monell Liability
### Town of Swampscott and Madigan

61. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

62. The defendants Town of Swampscott and Madigan, by their custom and usage of failing to exercise discipline and control over false arrests by Swampscott Police Department officers, acted and/or failed to act with deliberate indifference to the constitutional rights of individuals who came in contact with the Swampscott Police Officers, which in whole or in part was the moving force behind the unlawful misconduct of Frayler, McCarriston and Bertram

63. The defendants Town of Swampscott and Madigan, by their custom and usage of failing to train its designated firearms officer and command staff of the Swampscott Police Department officers, acted and/or failed to act with deliberate indifference to the constitutional rights of individuals who came in contact with the Swampscott Police Officers, which in whole or in part was the moving force behind the unlawful misconduct of Frayler, McCarriston and Bertram

64. The conduct of defendants Town of Swampscott and Madigan, proximately caused of plaintiff's civil and common law rights complained of herein.

## COUNT III
### False Arrest
### Frayler, McCarriston, Bertram

65. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

66. By their conduct as set forth herein, Frayler, McCarriston and Bertram did cause DiCicco to be arrested and detained without probable cause, and as a direct and proximate result he was wrongfully detained.

## COUNT IV
### False Imprisonment
### Frayler, McCarriston, Bertram

67. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

68. On, or about October 11, 2011, Plaintiff was unlawfully and intentionally confined against his will, without right or privilege. This was the direct result of the unlawful conduct of the defendants, jointly and severally.

69. As a direct and proximate result of the acts described above, the plaintiff was falsely imprisoned, deprived of his liberty, and therefore, was damaged.

## COUNT V
## Malicious Prosecution
## John Doe

70. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

71. Defendant John Doe signed an Application for Criminal Complaint based on information he knew, or should have known to be false and in so doing led directly to the improper institution of criminal proceedings against Plaintiff.

72. Defendant John Doe improperly instituted criminal proceedings against Plaintiff by initiating Plaintiff's arrest without probable cause, and by intentionally and maliciously disregarding exculpatory evidence.

73. The criminal prosecution of Plaintiff was legally and finally terminated in his favor through a dismissal by means of a Nolle Prosequi.

74. As a result of his acts and omissions in causing the institution and continuation of proceedings against Plaintiff, Defendant John Doe proximately caused Plaintiff great damage.

## COUNT VI
## Defamation
## All Defendants

75. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

76. The defendants jointly and severally published false statements about the Plaintiff.

77. The false statements which the defendants published concerning the Plaintiff exposed the Plaintiff to public scorn, ridicule and contempt in the community and the publication of these false statements, in the newspaper and in official government records, had the effect of deterring third persons from associating or dealing with him.

78. The publication of false statements concerning the Plaintiff caused him great damage.

Case 1:15-cv-10807-PBS   Document 1-3   Filed 03/12/15   Page 11 of 20

## COUNT VII
### Vicarious Liability
### Town of Swampscott

79. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

80. To the fullest extent allowable under any theory of law, the Town of Swampscott is vicariously liable for the acts of its agents, servants and employees, including all persons named as defendants, but also including any other persons involved in the unconstitutional and otherwise flawed false arrest and aborted prosecution of Plaintiff.

## COUNT VIII
### Intentional Infliction of Emotional Distress
### All Defendants

81. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

82. The intentional and or grossly reckless actions described above attributable to each defendant, jointly and severally were outrageous and beyond the scope of common decency.

83. The intentional and or grossly reckless actions described above attributable to each defendant, caused the Plaintiff to suffer great emotional distress.

## COUNT IX
### Negligent Infliction of Emotional Distress
### All Defendants

84. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

85. The negligent actions described above attributable to each defendant, jointly and severally were outrageous and beyond the scope of common decency.

86. The negligent actions described above attributable to each defendant, caused the Plaintiff to suffer great emotional distress.

## COUNT X
### Violation of Massachusetts Civil Rights Act
### All Defendants

87. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

16

88. By engaging in the conduct described above, including threats, intimidation and coercion, the defendants interfered with and deprived Plaintiff of his exercise and enjoyment of his civil rights secured under the laws of the Commonwealth of Massachusetts, in violation of Massachusetts General Laws Chapter 12, §11I.

89. As a direct and proximate result of the defendant' violation of M.G.L. c.12, §11I, plaintiff suffered the injuries described above, to wit, false arrest, unlawful detention, the defaming of his name, and emotional damage.

### COUNT XI
### Massachusetts Tort Claims Act
### Town of Swampscott

90. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

91. By the actions and conduct described above, the Town of Swampscott, through its employees, breached its duty to Plaintiff.

92. By the actions described above, the Town of Swampscott, through its employees, caused damage to Plaintiff.

### PRAYER FOR RELIEF

The Plaintiff respectfully requests the Court to order the following relief:

1. All compensatory damages recoverable;
2. All punitive damages recoverable;
3. All attorney's fees, costs and expenses allowable;
4. That defendants be found jointly and severally liable;
5. Any and all other relief as the Court deems just and proper;

### PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT

Respectfully submitted,
John Paul DiCicco, Plaintiff
By his attorney,

Jeffrey Rosario Turco, BBO #
Law Office of Jeffrey Rosario Turco
378 Broadway
Chelsea, MA 02150
Office (617) 884-1150
Facsimile (617) 884-1016
jturco@turcolawoffice.com

Dated October 9, 2014

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

DISTRICT COURT DEPT
LYNN DISTRICT COURT
DOCKET NO. 1113CR5062

COMMONWEALTH OF )
MASSACHUSETTS )
)
)
vs. )
)
JOHN DICICCO )
)

## NOLLE PROSEQUI

Now comes the Commonwealth and hereby enters a Nolle Prosequi as to the complaint against John DiCicco identified by Docket No. 1113CR5062. The Defendant was charged, inter alia, with two counts of possessing a firearm without a license in violation of M.G.L. c. 269 § 10(h).

Although the arrest was made in good faith, the charges are not supported where M.G.L. c. 140 §131(i) states that a "license shall remain valid for a period of 90 days beyond the stated expiration date on the license," and the Defendant's license had expired less than 30 days before his arrest.

For these reasons, the continued prosecution of this complaint is not in the interest of justice.

*The Defendant should never been arrested on this matter.*

4/27/12
CONCUR, J.

Date: November 7, 2011

Respectfully Submitted
JONATHAN BLODGETT,
District Attorney for the Eastern District

Lisa S. Core
Assistant District Attorney
BBO #658709
Lynn District Court
580 Essex St.
Lynn, MA 01901

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon the attorney of record for each other party on this date: November 7, 2011.

Lisa S. Core

TRUE COPY ATTEST

CLERK MAGISTRATE
DISTRICT COURT OF SOUTHERN ESSEX
580 ESSEX STREET
LYNN, MASSACHUSETTS 01901

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

DISTRICT COURT DEPT
LYNN DISTRICT COURT
DOCKET NO. 1113CR5062

COMMONWEALTH OF
MASSACHUSETTS

vs.

JOHN DICICCO

## COMMONWEALTH'S MOTION TO VACATE/EXPUNGE

This Court should vacate or expunge any record appearing on the Defendant's Board of Probation Record relating to this case.

The Commonwealth has filed a *Nolle Prosequi* as to the Complaint, which had charged the Defendant with two counts of violating M.G.L. c. 269 § 10(h). According to the police report dated October 12, 2011 relating to the Defendant's arrest, the Defendant's firearms license expired on September 19, 2011. M.G.L. c. 140 §131(i) however, states that a "license shall remain valid for a period of 90 days beyond the stated expiration date on the license." The Defendant therefore should not have been charged with possessing a firearm without a license.

For these reasons, and in the interest of justice, this Court should allow the Commonwealth's motion.

Respectfully Submitted
JONATHAN BLODGETT,
District Attorney for the Eastern District

Lisa S. Core
Assistant District Attorney
BBO #658709
Lynn District Court
580 Essex St.
Lynn, MA 01901

Date: November 7, 2011

CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon the attorney of record for each other party on this date: November 7, 2011

Lisa S. Core

EXHIBIT C

# Law Office of Jeffrey Rosario Turco

Jeffrey Rosario Turco, Esquire*
378 Broadway
Chelsea, Massachusetts 02150

(o) (617) 884-1150
(o) (617) 819-4505
(f) (617) 884-1016
jrturco@turcolawoffice.com

\* Also admitted in CT

August 24, 2012

Thomas G. Younger, Town Administrator
Town of Swampscott
22 Monument Avenue
Swampscott, MA 01907

Richard Malagrifa, Chairman
Board of Selectmen
Town of Swampscott
22 Monument Avenue
Swampscott, MA 01907

Chief of Police Ronald Madigan
Swampscott Police Department
86 Burrill Street
Swampscott, MA 01907

RE:  **DEMAND PURSUANT TO M.G.L. c.258**

Dear Sirs:

Please be advised that this office represents Mr. John Paul DiCicco with respect to his claims against the Town of Swampscott, the Swampscott Police Department and Swampscott Police Officer Michael Frayler for the false arrest occurring on Tuesday evening, October 11, 2011 and for failure to train.

## RELEVANT FACTS

On October 11, 2011, Mr. DiCicco, a resident of East Boston with no prior record, joined his uncle, a Swampscott resident for a day of hunting in New Hampshire. Upon his arrival in Swampscott he parked his car and entered his uncle's car for the ride to New Hampshire.

Thomas G. Younger, Town Administrator
Richard Malagrifa, Chairman, Board of Selectman
Ronald Madigan, Chief of Police
August 24, 2012
Page 2

After a long day of hunting, Mr. DiCicco returned to Swampscott with his uncle and said the customary good-byes. Shortly before 10:00PM, he placed his locked shotgun, along with his ammunition, and various knives used for hunting into his car. He then entered his car and began the return trip back to East Boston. At all times relevant to this letter, Mr. DiCicco was the licensed, lawful holder of a Massachusetts firearms identification card. A few minutes into his return trip home, Mr. DiCicco was the subject of a routine traffic stop. The police officer informed Mr. DiCicco that he was being pulled over for speeding and requested his license and registration. Mr. DiCicco immediately responded to the officer's request and provided his license and registration. As a responsible citizen and gun owner, Mr. DiCicco informed the Swampscott Police Officer, later identified as Officer Michael Frayler, that: 1) he had just returned from a hunting trip, 2) he had a shotgun and ammunition in his car, 3) he had several hunting related knives both on him and in the trunk of the car and 4) that he was the holder of a Massachusetts Firearms Identification Card. Officer Frayler ordered Mr. DiCicco to exit the vehicle. Mr. DiCicco showed the officer his FID card as well as his paperwork demonstrating that he had filed his renewal application with the Boston Police Department and had paid the applicable fee. Mr. DiCicco was then frisked, placed in handcuffs, detained by Officer Frayler and subsequently placed into the back of the police cruiser. A short while later additional Swampscott police and members of the Massachusetts State Police arrived. Officer Frayler informed Mr. DiCicco that his FID card was expired, and since he failed to file a renewal application prior to expiration, the statutory 90 day grace period did not apply. Officer Frayler informed Mr. DiCicco that he "was one of the licensing officers for Swampscott Police and was very familiar with the laws." A Swampscott Sgt., presently unknown, inquired of Officer Frayler if he was sure of his interpretation to which Officer Frayler stated 'yes, he is under arrest.' Mr. DiCicco was handcuffed, brought to the Swampscott Police Station and booked like a common criminal. His hunting equipment was taken into custody by the Swampscott Police and his car was towed from the scene. Prior to being bailed out, Officer Frayler approached Mr. DiCicco and stated, 'if you didn't tell me about the gun, I would have put my fist in your face.'

Thomas G. Younger, Town Administrator
Richard Malagrifa, Chairman, Board of Selectman
Ronald Madigan, Chief of Police
August 24, 2012
Page 5

Your prompt attention to this demand is appreciated.

Respectfully yours,

Jeffrey Rosario Turco, Esquire

xc.: John Paul DiCicco